MARY A. HAFNER et al., Appellants, v. GEORGE D. MILLER.

GEORGE D. MILLER v. MARY A. HAFNER et al., Appellants.

Division Two, June 11, 1923.

1. **WEIGHT OF EVIDENCE: Action at Law: To Quiet Title: Partition: New Trial Granted.** A suit to quiet title in which no equitable relief is asked by either party, and a partition suit, are actions at law, and being such it is the province of the trial court to weigh the evidence, and if an erroneous or improper conclusion is reached by the trial court it is likewise its right to correct the error and grant a new trial to the party against whom such error has been committed; and if the court grants a new trial on the ground that its finding was contrary to the weight of the evidence, the appellate court cannot say that as a matter of law the trial court erred in granting it for that reason.

2. **ELECTION: Renunciation of Will: Antenuptial Contract: Common-law Marriage: Substantial Evidence.** The childless testatrix by her will gave her husband one-third of her cash and securities. After her death the husband renounced the will in due time and elected to take one-half of her estate, some of which was real estate. Testatrix's sister and father sought to bar his right to make such election by pleading an antenuptial oral contract, made on

Hafner v. Miller.

the day of a ceremonial marriage by a justice of the peace and a few days preceding her death, by which he agreed to take, in consideration of the consummation of the marriage, one-third of her cash and securities as his full share in her estate. Evidence to prove this agreement having been admitted, the husband attempted to prove that he and testatrix had been husband and wife for ten years under a common-law marriage. *Held*, that, if the common-law marriage had existed as stated before the date of the alleged ceremonial marriage the husband was entitled to disclaim any interest under the will and take one-half of testatrix's estate, and the evidence to prove the common-law marriage being substantial its weight was for the trial court, and having first made a finding against the husband the subsequent act of the court in granting a new trial on the ground that the finding was against the weight of the evidence must be sustained on appeal, it being the province of the trier of the fact to determine the probative force of the evidence to establish the common-law marriage.

3. ———: **Antenuptial Contract: Proof.** The evidence to prove that the childless testatrix and her husband on the day of and before their ceremonial marriage entered into an oral agreement by which he agreed to take, in lieu of all other interests in her estate, one-third of her cash and securities, must be strong, clear, cogent and convincing and of such a character as to leave no reasonable doubt in the mind of the chancellor that the contract was made, and made substantially in the terms stated, and was based upon an adequate and legal consideration; otherwise, it cannot be excepted from the operation of the Statute of Frauds requiring it to be in writing. Testimony that testatrix said to respondent just before a license was obtained "if I marry you will you be satisfied with one-third of my cash and securities" and that he replied "yes," and that after the will was written she said to him that "I thought the cash would suit you better than any one else, so I made you one-third cash and securities" and that he replied, "I am satisfied with whatever you do," being only such language as ordinarily might be used by one contemplating the making of a will, and in discussing with a beneficiary the disposition made of property, was not sufficient to establish an antenuptial contract on the part of respondent to have a ceremonial marriage performed, nor was there such a contract as prevented him from renouncing the will and electing to take one-half of her estate under the statute.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

Hafner v. Miller.

AFFIRMED.

*Albert C. Davis* and *Lew R. Thomason* for appellants.

(1) Marriage is a civil contract by which a man and woman reciprocally engaged to live with each other during their joint lives, and to discharge the duties towards each other imposed by law on the relation of husband and wife. It does not mean a temporary agreement to dwell together for a time for the gratification of sexual desires, but it is essential that the contract be entered into with a view of its continuance through life. Banks v. Gailbreath, 149 Mo. 529. The presumption of a common-law marriage from the contract of the parties is a rebuttable presumption, and an instruction which ignores a written contract in which they both hold themselves out as unmarried, making the presumption conclusive, is erroneous. Passgile v. Wood, 63 Mo. 513; Adair v. Mitte, 156 Mo. 499. To establish a valid common-law marriage there must be not only reputation and cohabitation as a sequence thereof, but a present contract through words by which the man agrees to take the woman as his wife and the woman agrees to take the man as her husband. Tooper v. Percy, 197 Mo. 532; Bishop v. Brittain Inv. Co., 229 Mo. 700. The presumption of a common-law marriage is overcome when it is established that the relation was in its inception illicit. Imboden v. Trust Co., 111 Mo. App. 235; Williams v. Williams, 46 Wis. 464; Reading First Ins. Co.'s Appeal, 113 Pa. St. 104; Hesseltin v. McLaughlin, 4 Wash. 570; Klippel v. Klippel, 41 Col. 40. While a subsequent ceremonial marriage is not inconsistent with a prior common-law marriage, still the solemnization of a marriage ceremony is strong admission against the alleged prior marriage. Commonwealth v. Stump, 53 Pa. St. 132; Imboden v. Trust Co., 111 Mo. App. 234; Bishop v. Brittain Inv. Co., 229 Mo. 731. (2) No particular form of words is required to constitute an antenuptial agree-

ment or marriage settlement. Any language which clear-
ly shows an intention to create a marriage settlement is
sufficient. It may be in the form of a bond or in the
form of a will. Antenuptial contracts are to be liberally
construed so as to carry into effect the intention of the
parties. While the law prescribes the rights of hus-
band and wife in the property of each other, they may
nevertheless, by antenuptial agreement, exclude the law
in this respect, and determine for themselves their re-
spective rights in each other's property. The Statute
of Frauds applies only to executory contracts and has no
application to contracts that have been executed or per-
formed on the one side. Richardson v. Champnin, 143
Mo. 538; Smith v. Davis, 90 Mo. App. 533; Bless v. Jen-
kins, 129 Mo. 671; McGinis v. McGinis, 274 Mo. 297;
Blanton v. Knox, 3 Mo. 343; Self v. Cordell, 45 Mo. 48;
McConnell v. Brayner, 63 Mo. 461. (3) Equity will not
suffer the intentions of the parties to be defeated by
the very act designed to give effect to such contract.
Story on Equity, sec. 1370. The weight and convincing
character of testimony does not depend so much upon
the number of witnesses testifying as upon the intelli-
gence, honesty and veracity of those who testify, and a
parol agreement may be established by the uncorrobo-
rated testimony of one witness. Novack v. Berger, 133
Mo. 24; Merrill v. Thompson, 252 Mo. 714; Collins v.
Haswell, 219 Mo. 311. (4) Marriage is a sufficient con-
sideration to support a contract. Marriage being in its
nature permanent and being the most important of all
civil relations, and is the highest and most valuable con-
sideration, the law will not permit the inducements which
led up to it to be disturbed. Bank v. Read, 131 Mo. 533;
Welsh v. Mann, 193 Mo. 315. An agreement to make a
will in a particular way is valid if supported by a suffi-
cient consideration, and although the contract may be
oral, if executed or performed on the one side, is en-
forceable. Wright v. Tinsley, 30 Mo. 389; Gupton v.
Gupton, 42 Mo. 37; Sutton v. Hayden, 62 Mo. 401;

Sharkey v. McDermot, 91 Mo. 647. Where a will is made upon a valuable consideration the disposition is no longer in the nature of a gift gratuitous. It is then irrevocable and an antenuptial contract may be made the basis for the testamentary disposition of a contracting spouse. Cole v. Society, 64 N. H. 445; Crofeet v. Layton, 68 Conn. 91; Teske v. Dittberner, 70 Neb. 544. And where one contracts upon a valuable consideration to execute a will after a certain tenor, the agreement is binding after his death and may be specifically enforced. Gould v. Mansfield, 103 Mass. 408; Bolman v. Oreshall, 80 Ala. 451; Austin v. Kuehn, 211 Ill. 13.

*James F. Conran* for respondent.

(1) Respondent, being the widower of testatrix, under the laws had a right to elect to take statutory dower in her estate, she having died without any child or other descendant in being capable of inheriting, and the wife, by her will, could not preclude him from such dower. R. S. 1919, sec. 320; O'Brien v. Ash, 169 Mo. 283; Spurlock v. Burnett, 183 Mo. 116; Egger v. Egger, 225 Mo. 116; Waters v. Herboth, 178 Mo. 166. (2) The evidence offered by appellants does not prove any contract in consideration of marriage at all, but a mere desire to find out what will please the respondent. Asbury v. Hitchlin, 181 Mo. 676; Walker v. Bohannon, 203 Mo. 136; Burt v. McKibben, 188 S. W. 187. (3) The contract as pleaded was not proved or testified to by any witness. There was no evidence of any agreement by Mrs. Miller to make a will, or of Mr. Miller to take under a will. (4) A mere casual conversation is not a contract. Lamb v. Lamb, 46 N. Y. Supp. 219; Chapman v. Cherry, 243 Mo. 375; Hirsch & Sons v. Paragould R. Co., 148 Mo. App. 173; Lungstrass v. German Ins. Co., 48 Mo. 201; Elliott on Contracts, secs. 25-26; 13 Corpus Juris, pp. 265-66; Lucky v. Railroad Co., 133 Mo. App. 589; Sutter v. Raeder, 149 Mo. 297; Green v. Cole, 103 Mo 701; 9 Cyc. 241. (5) The alleged antenuptial contract as pleaded

by appellants falls within the Statute of Frauds and is void. 10 Am. Law Review, 333; Lloyd v. Fulton, 91 U. S. 479; Hackney v. Hackney, 27 Tenn. 452; Bradley v. Saddler, 54 Ga. 681; Manning v. Riley, 52 N. J. Eq. 39; Chase v. Fritz, 132 Mass. 359; Henry v. Henry, 27 Ohio St. 121; Mallory v. Mallory, 92 Ky. 684. (6) An agreement by an intended spouse in consideration of marriage to renounce the interest in the estate of the other spouse to which he or she would be entitled as the survivor, falls within the provision of the Statute of Frauds requiring contracts in consideration of marriage to be in writing. 25 R. C. L. 448, sec. 20; McAnulty v. McAnulty, 120 Ill. 26; Frazer v. Andrews, 134 Iowa, 621; Rowell v. Boleer, 142 Wis. 304, 90 A. S. R. 510; Mallory v. Mallory, 92 Ky. 316; White v. Giblow, 154 Mass. 593; Watkins v. Watkins, 82 N. J. Eq. 483; Dienst v. Dienst, 175 Mich. 724. (7) Marriage has never been regarded as sufficient part performance of an antenuptial parol contract to withdraw the contract from the operation of the statute. This is the law established by an unbroken line of decisions from the enactment of the Statute of Frauds to the present time. Browne on Statute of Frauds (5 Ed.) sec. 459; Fry on Specific Performance, pp. 285-6; Wood on Statute of Frauds, sec. 174; 1 Reed on Statute of Frauds, sec. 182; 25 R. C. L. 451, sec. 25. (8) The ground on which the courts hold that performance takes a contract out of the purview of the Statute of Frauds is that when one of two contracting parties has been induced or allowed by the other to alter his position on the faith of the contract it would be a fraud in the other to set up the legal invalidity of the contract. And the act of performance must be in addition to marriage. Caton v. Caton, L. R. 1 Ch. 137; 5 Pomeroy, Equitable Jurisprudence, sec. 2239; Walker v. Bohannon, 243 Mo. 119; Collins v. Harrell, 219 Mo. 236. (9) But the appellants attempt to twist the alleged contract as pleaded into a promise on the part of the intended wife to make a will, a violent twist indeed, but even if she contracted to make

a will, and made one, it would not be such past perform-
ance as would take the contract out of the operation of
the Statute of Frauds. Caton v. Caton, L. R. 1 Ch. 137;
Dienst v. Dienst, 175 Mich. 724; In re Edwall's Estate,
75 Wash. 391; Gould v. Mansfield, 103 Mass. 408; Hughes
v. Hughes, 193 Pac. 144; Swash v. Sharpstein, 14 Wash.
426; McClanahan v. McClanahan, 72 Wash. 138. But
there is not a word of evidence of any offer or agreement
on the part of the wife to make a will, or of Miller to ac-
cept a bequest in a will. (10) Appellants pleaded an
alleged contract in consideration of marriage, between
respondent and testatrix, as a bar to respondent's right
to take statutory dower, and fixed the date of the alleged
contract as on the Saturday before September 14, 1920.
If respondent and Frances Fitzgibbons Miller were man
and wife prior to that date, and continued to remain
such, there would be no consideration for the alleged
contract and respondent had a right to statutory dower.
(11) A common-law marriage, entered into in Missouri
prior to September 14, 1920, is a valid marriage. Car-
gile v. Wood, 63 Mo. 512; Tapper v. Perry, 80 Mo. App.
638; Ashferd v. Life Ins. Co., 80 Mo. App. 638. Marriage,
being a civil contract, may be proved as other contracts
are capable of proof. The evidence in this case meets the
most stringent requirements of our courts and proves
a common-law marriage between Frances Fitzgibbons,
then a widow, and George D. Miller, in 1910, which con-
tinued uninterrupted to the time of the wife's death in
1920. Bishop, Marriage Div. & Sep., sec. 932; Abbott's
Trial Evidence (3 Ed.) p. 252; Cargile v. Wood, 63 Mo.
512; Bishop v. Brittain Inv. Co., 229 Mo. 700; 2 Lawson,
Rights, Remedies and Practices, par. 711. A subsequent
ceremonial marriage is not inconsistent with a prior
common-law marriage, and it does not necessarily over-
come the presumption thereof which arises from matri-
monial cohabitation, the declarations and conduct of the
parties and their reputation. Simmons v. Simmons, 39
S. W. 639; Adger v. Ackerman, 115 Fed. 124; 26 Cyc.

892; Shank v. Wilson, 33 Wash. 612; Betsinger v. Chapman, 88 N. Y. 487; Ysern v. Horter, 118 Atl. 774. A desire to be married according to the accepted conventions of society, and to have absolute proof of record of the marriage, may prompt a ceremonial marriage after a common-law marriage. Adger v. Ackerman, 115 Fed. 114. The actual marriage dates from the time of the common-law marriage, and not the ceremonial marriage. Simmons v. Simmons, 39 S. W. 639; Betsinger v. Chapman, 88 N. Y. 487.

RAILEY, C.—The two causes above mentioned were by mutual consent consolidated in the Circuit Court of the City of St. Louis, and tried as one case; and occupy the same position in this court. The first of these two cases was brought by Mary A. Hafner to quiet title to certain real estate located in the city of St. Louis, and said George D. Miller was made defendant therein. This suit was brought for the February term, 1921, of said circuit court. At the April term, 1921, said George D. Miller, as plaintiff, brought, in said circuit court, against said Mary A. Hafner et al., as defendants, the second above case, which had for its purpose the partition of the same real estate described in the first case supra.

Frances Fitzgibbons Miller was the fee-simple owner of said real estate, and was the common source of title. She died on September 18, 1920, in the city of St. Louis aforesaid. Her will was duly probated in said city and, by the terms of same, she bequeathed to her husband, George D. Miller, one-third of her cash and securities. She gave to one nephew and two nieces, each five dollars, and divided the remainder of the personal property equally between Mary A. Hafner, her sister, and George W. Hardesty, her father. The real estate in controversy was devised to appellant Mary A. Hafner, on condition that she care for her father, George W. Hardesty, during his life. The testatrix left no child or other descendant in being capable of inheriting.

On December 15, 1920, the widower, George D. Miller, elected to take one-half of the real and personal property of his deceased wife, subject to the payment of her debts, in lieu of the provision made for him in her will, which election, duly acknowledged, was filed in the probate court of said city, on January 15, 1921, and duly filed for record in the Recorder's office in the city of St. Louis aforesaid, on March 2, 1921, and notice of same served on said Mary A. Hafner and George W. Hardesty.

To preclude respondent Miller from electing to take statutory dower, appellants plead an alleged antenuptial contract, between said George D. Miller and testatrix, as follows:

"That said bequest to said George D. Miller, in her last will and testament as aforesaid, was made under and by virtue of an antenuptial contract entered into between said Frances Fitzgibbons Miller and the said George D. Miller prior to the marriage between them, and in consideration of said Frances Fitzgibbons Miller marrying the said defendant George D. Miller, he, the defendant George D. Miller, agreed to take as his interest in the estate of his wife to be one-third of the cash and securities of which she might be seized."

The appellants allege performance on the part of Frances Fitzgibbons Miller, as follows:

"That the said Frances Fitzgibbons Miller when on her death bed carried out all the terms and agreements as aforesaid which she made with the said defendant George D. Miller, and thereafter, on the 14th day of September, 1920, married him, and by her last will and testament, made on the same day, bequeathed the said defendant George D. Miller the amount of cash and securities agreed upon between the defendant George D. Miller and said Frances Fitzgibbons Miller prior to the marriage aforesaid, and prior to the execution aforesaid."

The respondent denies *in toto* the existence of any such antenuptial contract between his wife and himself.

. In September, 1920, testatrix was sick, and, on the 14th of said month, sent respondent, George D. Miller, and her sister, Mary A. Hafner, one of the appellants, to procure a marriage license, and a justice of the peace to marry herself and George D. Miller. She also requested Mary A. Hafner to get George N. Cooper to draw her will. Lida Cooper came instead of George, and took the notes for the will. On the same day Justice Rice performed a civil ceremony of marriage between George D. Miller and testatrix. Later, on the same day, the will of Frances Fitzgibbons Miller was executed. Testatrix, on the same day, was taken to the hospital, operated on, and died from the result of the operation on September 18, 1920.

To prove the alleged antenuptial contract, the respondents offered Mary A. Hafner, the chief beneficiary, who testified as follows: That on Saturday, September 11, she heard Mrs. Fitzgibbons say to Mr. Miller: "If we get married will you be satisfied with one-third of my cash and securities?" and Mr. Miller said, "Yes;" that on September 14, Mrs. Miller sent her and Mr. Miller for a marriage license and for Cooper to write a will; that after Miss Cooper had taken the notes for the will Mr. Miller asked Miss Cooper, how it was written up, and she explained it to him, and Mrs. Miller said: "George I thought the cash would suit you better than anyone else, so I made you one-third cash and securities," and he said, "I am satisfied with whatever you do."

On cross-examination, Mrs. Hafner said she overheard the first conversation from an adjoining room, where Mrs. Miller was lying on the bed and Miller sitting thereon, where they could not see her, and no one else was present. She said that the first she learned of any intention of marriage between Mr. and Mrs. Miller was when Mrs. Miller asked her to go for a license September 14th; that she knew Mrs. Miller had never said that she would marry Miller.

Beneficiary George W. Hardesty testified that at some time, he didn't know when, probably ten days be-

fore her death, while he was in the adjoining room, he heard Mrs. Miller say: "George, if I marry you and give you one-third of my cash and securities, will you be satisfied?" and Mr. Miller said, "Yes."

On this evidence the appellants hang their contract.

The Statute of Frauds was interposed as a defense, and objection made to oral evidence to prove any contract in consideration of marriage, or any oral contract, and objection was made to any evidence to prove any contract in consideration of marriage, not in writing and signed as required by the statute. The court received this evidence over respondent's objection, subject to a later ruling, and at the close of the evidence ruled in favor of its admission, to which ruling respondent duly excepted.

Respondent then, having denied the existence of this alleged antenuptial contract, introduced evidence to prove a common-law marriage between himself and Frances Fitzgibbons, as having existed since 1910, when he and she went to live together as man and wife on Cote Brilliante Avenue; that they had lived together as man and wife ever since that date even to the time of the death of Frances Fitzgibbons Miller; that they had introduced each other as man and wife; had occupied the same home during all said time, and the same room and bed; that they were received into his family as man and wife, and his nephew called her "Aunt Fanny;" that she so signed herself when sending presents to his nephew and niece; that each took out one or more insurance policies in favor of the other, respondent designating her as his wife, and she designating him as her husband, as early as 1912 and 1913; that they had lived most of this time in the lower part of the city, where Mrs. Miller kept roomers a part of the time; that respondent worked all the time, either in delivering ice or in delivering papers; that the ceremonial marriage was the wish of Mrs. Miller to be married as other people were.

Appellants, being father and sister of the deceased, sought to wring from respondent's witnesses an admis-

sion that the respondent and decedent were at all times prostitutes, engaged in running bawdy houses and, by questioning the place of residence, and the district in which they resided, calling it the "red-light district," appellants draw a conclusion from their own questions, that respondent and decedent were running bawdy houses. From the fact that they were arrested in 1917, accused of keeping a house of ill-fame, appellants claim they were not man and wife, but maintained towards each other a meretricious relation.

Respondent's sister and the many friends of both George D. Miller and Frances Fitzgibbons Miller bore testimony to the marital relation of the couple; to the high esteem in which they were held, and of their good reputation.

Even appellants did not deny that Frances Fitzgibbons Miller was a good woman.

The court, having decided in favor of appellants, later upon reading the evidence, was convinced that it had committed error, and that the legal evidence would not sustain the findings. Accordingly, a new trial was granted respondent in both cases, on the ground that the finding was against the evidence.

I.    In the case brought by Mary A. Hafner, et al. v. George D. Miller, under Section 1970, Revised Statutes 1919, to quiet and determine the title to real estate in controversy, no affirmative equitable relief was asked by either party and, hence, the action was **Action at Law: Weight of Evidence: New Trial.** purely one at law in which the duty of passing on the weight of the evidence devolved on the trial court. [State ex rel. Ins. Co. v. Reynolds, 289 Mo. l. c. 400 and following, 232 S. W. l. c. 688-9; Colburn v. Krenning, 220 S. W. (Mo.) l. c. 937.] The record and pleadings in the second case, brought by respondent, George D. Miller, against Mary A. Hafner et al., under Sections 1970 and 2008, Revised Statutes 1919, to determine the title and

partition the real estate in question, are in the same condition as in first case, and must be treated as an action at law.

In view of the foregoing, it was the province of the trial court to pass upon the weight of the evidence adduced at the trial, and if an erroneous or improper conclusion was reached by the court in passing upon the facts, it had the legal right to correct the error thus made, and grant a new trial to the party against whom such error had been committed. [Littig v. Urbauer-Atwood Heating Co., 292 Mo. 226; State ex rel. v. Ellison, 268 Mo. l. c. 231 and following.] Unless we can hold as a matter of law, that plaintiff was entitled to recover on the facts disclosed in the record, the trial court committed no error in granting a new trial on the ground, that the conclusion reached by it was contrary to the weight of the evidence.

II. After reading and considering all the evidence, we are of the opinion, that respondent produced at the trial substantial evidence tending to show a common-law marriage between himself and testatrix, Frances Fitzgibbons Miller. [State v. Cooper, 103 Mo. l. c. 270; State v. Harris, 283 Mo. l. c. 109, 222 S. W. l. c. 422; McIntyre v. Frisco Ry. Co., 286 Mo. l. c. 246-7-8, 227 S. W. l. c. 1050.]

One of the clearest statements of the law on this subject will be found in State v. Cooper, supra, where THOMAS, J., speaking for this court, said:

"The fact that a man and woman live together for a long time publicly, pass and introduce each other and cohabit as husband and wife and say they are married, is evidence tending to prove a marriage, and may even raise a presumption that the parties were in fact married, but this presumption is one of fact and not of law. It is the province of the jury and not the court to determine what probative force these facts have in a given case."

The fact that respondent and his wife had been engaged in the disreputable business of conducting a baw-

dy house, and had been fined therefor, if such things occurred, were circumstances to be considered by the court in connection with all the facts disclosed in the record. We may observe in passing, that neither of the parties to this action seem to be averse to accepting a portion of the property accumulated by testatrix while engaged in the above business.

If, on a re-trial of the case the court should find that a valid common-law marriage had taken place between the testatrix and respondent, before the date of the alleged second marriage, then respondent was entitled, under the law, to disclaim any interest under the will and take one-half of testatrix's estate, as provided in Section 320, Revised Statutes 1919. [In re Estate of Wood, 288 Mo. l. c. 601, 232 S. W. l. c. 674; Egger v. Egger, 225 Mo. 116; Spurlock v. Burnett, 183 Mo. 524; Waters v. Herboth, 178 Mo. 166; Spratt v. Lawson, 176 Mo. 175; O'Brien v. Ash, 169 Mo. 283.]

It is manifest from reading the above authorities, that if respondent and testatrix had, under the common law, become husband and wife, his inchoate dower interest could not thereafter be taken from him, except by a voluntary contract—based upon a valid consideration—which could be enforced in court.

III.   Was the trial court justified in granting respondent a new trial on the ground that the finding of the court was against the weight of the evidence in respect to the alleged antenuptial contract pleaded and relied on by appellants? If the evidence of appellants offered in support of their contention that a valid antenuptial contract was made as alleged, be held insufficient to establish the same, it is plain that they have no standing in court, as respondent was undoubtedly married to testatrix, and elected in a proper manner to take one-half of his wife's property, subject to the payment of her debts, in lieu of that which she gave him in the will.

New Trial:
Election:
Common-Law
Marriage.

Here is the sum total of the evidence of appellants offered on that subject: Respondent and testatrix were in their private home, and Mary A. Hafner, one of the parties directly interested in the result of this case, testified that she overheard part of a conversation between respondent and testatrix, as follows: "If we get married will you be satisfied with one-third of my cash and securities?" and respondent said, "Yes." The same witness testified that testatrix, after the will was written, in the presence of respondent, said: "George, I thought the cash would suit you better than any one else, so I made you one-third cash and securities," and respondent said, "I am satisfied with whatever you do." On cross-examination the same witness testified that the first she learned of any intention of marriage between Mr. and Mrs. Miller was when Mrs. Miller asked her (witness) to go for a license September 14th, and that she knew Mrs. Miller had never said she would marry Miller.

The other testimony relied on by appellants to prove said contract was that given by appellant, Hardesty, who is directly interested in the result of this litigation, and who also claims to have overheard, while in the adjoining room, a conversation between respondent and testatrix, in which the latter said: "George, if I marry you and give you one-third of my cash and securities will you be satisfied?" and Miller said, "Yes."

It is obvious from the most casual reading of the record that respondent was not soliciting testatrix to have a ceremonial marriage performed. On the contrary, it was performed to gratify testatrix, who was then very sick and died a few days thereafter. The above language is just what ordinarily might take place where the owner of property contemplated making a will, and discussed, with the prospective beneficiary, the disposition which she anticipated making of her property in the will. We are of the opinion that the above conversations, aside from the Statute of Frauds, constituted no

contract upon the part of respondent to have a ceremonial marriage performed, nor did it obligate him to forego that which the law might give him, or his election, if a will should be made giving him a less sum.

In Burt v. McKibbin, 188 S. W. l. c. 191, we said:

"The proof of the making of the alleged contract must be 'so strong, cogent, and convincing as to remove and exclude every doubt that the decedent made the contract.' [Steele v. Steele, 161 Mo. l. c. 575, 61 S. W. 817.] In Wales v. Holden, 209 Mo. 552, 108 S. W. 89, it was said that the proof must be 'overwhelming.' [See, also, Oliver v. Johnson, 238 Mo. 359, 142 S. W. 274, and Walker v. Bohannan, 243 Mo. 136.]

"Not only must the proof show beyond a reasonable doubt that a contract was made, but it must appear from such proof that the terms of the contract were 'clear, definite, and unequivocal.' [Rogers v. Wolfe, 104 Mo. 1, 14 S. W. 805.] It is there said: 'If the terms are uncertain or ambiguous, or not made out by satisfactory proofs, a specific performance will not (as indeed upon principle it should not) be decreed.' "

The law in relation to this matter has been very clearly and forcefully stated by GRAVES, J., in the well considered case of Walker v. Bohannan, 243 Mo. l. c. 135 and following, where it is said:

"The enforcement of contracts of the character here involved is an exception which courts of equity have engrafted upon the Statute of Frauds. The exception is one that is sparingly exercised, and rightfully so. Title to real estate should not slumber in oral contracts to convey.

"The very conscience of the court must be touched by the facts of the particular case before the exception of the statute will be called into play. The Statute of Frauds had its origin in the dangers which developed in permitting the title to real estate and contracts as to other weighty matters to rest in parol. Court weighing evidence by the usual rules were constantly enforcing

contracts, which were thought to have been proven by false and perjured testimony. The statutes were not only a boon to property interests, but to the courts as well. Not only so, but it removed from society the temptation to acquire property and property rights through fraud and perjury.

"With the acquired experience the courts had gained before the passage of the original Statutes of Frauds and perjuries, they were slow to engraft thereon any exception to the iron-clad rule of the statute. Later, however, it became apparent to courts of conscience that frauds were being perpetrated under the strict letter of the statute.

"To obviate these frauds the exceptions to the statute here invoked was adopted by courts of equity, but not without well defined rules of procedure—rules, which like the statute itself, would be a safeguard as against the perpetration of frauds.

"The rules cover many phases; i. e.: (1) The alleged oral contract must be clear, explicit and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged, was in fact made and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) the work constituting performance must be such as is referable solely to the contract sought to be enforced, and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand but not upon the other would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; and (8) proof of mere disposition to devise by will or convey

by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed, made before the acts of performance relied upon were had.

"There may be other phases of the rule adhered to by the courts in cases of this character, but the foregoing are clearly within a long line of Missouri cases. The more recent ones are: Forrister v. Sullivan, 231 Mo. 345; Collins v. Harrell, 219 Mo. 279; Wales v. Holden, 209 Mo. 552; Kirk v. Middlebrook, 201 Mo. 245. Other cases of like tenor are found cited and discussed in the foregoing. Suffice it to say that they all indicate that the courts are slow to enforce contracts of the character we have here.

"It is only where the very justice of the thing is so clear, that the refusal of relief would itself amount to a deep seated wrong and fraud upon the party, that courts of equity will act, and as said before, this is right. The fickleness of land titles should be averted. The wholesale enforcement of such contracts would bring more absolute wrongs than the absolute denial of relief in all such cases. It should therefore be with discerning eye and ear that the chancellor appealed to should proceed. The single purpose should be the prevention of a real fraud, rather than an imaginary one. His decree should protect substance, rather than shadow, and the evidence to support his decree should point to a real and actual fraud as the outgrowth of a failure to enforce a clear, certain, reasonable and specific contract. By this we mean a contract between the parties, not a contract made for the parties by loose declarations gathered together after death has sealed the lips.

"Measured by these rules the plaintiffs' case must fail, as we shall undertake to show."

The respondent is relying upon the fact that he was the husband of testatrix and elected to take that which the law gave him at her death. The appellants are relying upon an alleged contract, which was never reduced

to writing. If Section 2169, Revised Statutes 1919, commonly known as the Statute of Frauds, can be ignored and disregarded on such testimony as that relied on in this case, it should be abolished as being without benefit in the practical administration of the law.

The trial court was right in granting respondent a new trial in both the above cases. We accordingly remand the same for further proceedings. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.