J. H. COLLIER, Appellant, v. CHARLES E. PORTER ET AL.—16 S. W. (2d) 49.

Division One, March 29, 1929.

*R. P. Stone* and *Harry H. Kay* for appellant.

*Irwin & Bushman* for respondent.

SEDDON, C.—Plaintiff, the widower of Emma Collier, deceased, brought this action, seeking a widower's share in the real estate of his deceased wife under,. and by virtue of, Sections 320 and 321, Revised Statutes 1919, and under, and by virtue of, an act of the General Assembly which was approved on March 29, 1921, and which became operative and effective on June 20, 1921. [Laws of 1921, page 119.] The petition is cast in two counts, the first count being one

to ascertain and determine the title to certain described lands, owned and possessed by the deceased wife at her death, and situate in Miller County, Missouri; and the second count being one for partition of the same lands. The separate counts of the petition are conventional in form.

The defendants are the brothers and sisters of Emma Collier, deceased. All of the defendants made default, except the defendant, Charles E. Porter, who answered. The answer of said defendant admits the marriage of plaintiff and Emma Collier on or about November 1, 1916; that said Emma Collier died testate in March, 1925, without surviving issue, and leaving surviving her, as her only heirs-at-law, the defendants, her brothers and sisters, and the plaintiff, her husband; that Emma Collier died seized and possessed of all the lands described in the petition; and that plaintiff filed a renunciation of the will of Emma Collier within six months after her death. The answer denies that plaintiff has any right, title, or interest in and to the lands described in the petition, and avers, among other matters, that "on the 8th day of September, 1917, the deceased, Emma Collier, made and executed her last will and testament wherein she, the said Emma Collier, devised and bequeathed to her husband, J. H. Collier, the sum of one dollar; that she further devised and bequeathed to her sisters, Rosa Ellis and Nettie Erkson, each the sum of one dollar, and to her brothers, E. B. Porter and A. B. Porter, each the sum of one dollar, and all the balance of her property, both real and personal, which she owned at the time of her death, she bequeathed to this defendant, Charles E. Porter; a copy of which will is hereto attached and marked Exhibit A, and made a part of this petition.

"Defendant says that all of the property of which the said Emma Collier died seized and possessed was property acquired by her through inheritance and by means of her own separate labor, and was owned and possessed by her prior to her marriage to the plaintiff, J. H. Collier, and that no part of said property was acquired by the joint labor of the said J. H. Collier and the said Emma Collier, deceased, after their intermarriage about the year 1916; that said property, and each and all thereof, remained the separate property of the said Emma Collier at the time of her death.

"Defendant says that, at the time of the death of the said Emma Collier, she was more than sixty years of age, and that she had been previously married upon two former occasions; that her first husband died a long number of years ago, and that she thereafter intermarried a second husband about the year 1903, and resided with him until about the year 1913, at which time the said second husband died; that the said Emma Collier thereafter remained a widow until her intermarriage with the plaintiff about the year of 1916, and that, after her marriage with the plaintiff Collier, the said Collier mis-

treated her and left and abandoned her without just cause or excuse, but because the said Emma Collier refused to deed her property to the plaintiff; that his treatment toward her was cruel and inhuman, and although she was often sick and needed the care and attention of a physician and was almost totally blind, yet the said Collier failed to administer to her wants and would charge her for taking her to the doctor, and that he had abandoned and was living separate from the said Emma Collier at the time of her death; that said abandonment had been continuous for more than one year next before the death of the said Emma Collier.

"Defendant further says that, while the said Emma Collier, deceased, was intermarried with her second husband, said husband was sick and afflicted with tuberculosis during all the time of said marriage, and was a great charge and care upon the said Emma Collier; that she and her said second husband lived upon, and were the owners of a farm, but because of his physical condition neither the said Emma Collier nor her husband was able to farm said land, and because of his physical condition the said Emma Collier was unable to wait upon her said husband and he required care and attention of some other person to administer to his wants; that long prior to the marriage of the said Emma Collier with her second husband, and during her widowhood, this defendant worked for the said Emma Collier, waited upon her and administered to her wants, and that, during the life of the said second husband, this defendant worked for the said Emma Collier and her husband, attended their crops upon the farm, cut and hauled their wood, built fences, and in fact did all the work upon their said farm; and, besides, he nursed the husband of the said Emma Collier for a long number of years during his affliction with tuberculosis; that, because of his physical condition, the care and attention given by this defendant to the husband of the said Emma Collier, at the request and for the benefit of his sister, was very arduous and entailed upon him a great burden, and during a part of this time defendant himself had a family and was undertaking to farm for himself, and that, in order to administer to the wants of his sister and her husband, and at the request of the said Emma Collier and her husband, he deprived himself of the enjoyment of the society of his own family, and left his wife to work their own farm, while he went to the aid of his said sister and her husband and cultivated their farm and waited upon and nursed them; that, after the death of the said husband herein referred to until her marriage with the said J. H. Collier, she remained a widow, and during such widowhood this defendant continued to work for said Emma Collier, nurse her during sickness, cultivate her lands, and to make such improvements upon her property as she requested, for all of which neither the said Emma Collier, nor her said husband, nor any of them, ever paid to this defendant

anything whatever for his work and services, but said labor was performed with the agreement and understanding between this defendant, Charles E. Porter, and said Emma Collier and her said second husband, that, if this defendant did continue to render services to the said Emma Collier, and to her said husband, so long as either of them should live, and that, at the death of the survivor, this defendant was to receive as compensation for his said services all the property of every kind and character, both real, personal and mixed, of which such survivor should die seized and possessed.

"This defendant says that said contract was made between himself and the said sister and her former husband long prior to the marriage between the said Emma Collier and the plaintiff, J. H. Collier, and it was agreed and understood that the said Emma Collier, if she survived her said husband, herein referred to as the second husband, would convey all her property at or before her death to the defendant in consideration of said services, either by will or deed, or such proper conveyance as would effectually and legally convey said property to the defendant; that, after the intermarriage of the said Emma Collier with the said J. H. Collier, the said Emma Collier was in poor health and was nearly blind; that she was greatly neglected and was often abandoned by the said J. H. Collier, and this defendant continued to carry out his agreement so made as aforesaid to care for her so long as she should live, waited upon, nursed and cared for his said sister, and worked upon her property, and continued such services down to the death of the said Emma Collier; that said services were rendered with the knowledge of the said J. H. Collier, and this defendant says, and alleges the fact to be, that, prior to the marriage of the said J. H. Collier with the said Emma Collier, they entered into a prenuptial contract whereby each of them was to retain as their separate property all of the lands, tenements, goods and chattels which they each possessed at the time of their marriage; that the said J. H. Collier thereafter procured possession of the said contract and destroyed the same, and it cannot now be produced.

"Defendant says that all the property of which the said Emma Collier died seized she inherited from her second husband long prior to her marriage with J. H. Collier, and that much of said property was accumulated through the work and labor of this defendant, for which he has received no compensation whatever; that, in pursuance to said agreement heretofore made, and fully performed upon the part of this defendant, the said Emma Collier undertook to convey to this defendant said property by the execution of a will, herein referred to and marked Exhibit A and made a part of this petition; that, at the time the said Emma Collier executed said will, she executed it as a conveyance of her said separate property in accordance with the terms of said agreement, and in an effort to carry out said agreement long before entered into with this defendant, in con-

sideration of said services so rendered by him.'' The answer prays the judgment and decree of the court, declaring the defendant, Charles E. Porter, to be the sole and absolute owner, in fee simple, of the lands described in the petition, and prays general equitable relief.

Plaintiff demurred, generally and specially, to the answer of defendant, Charles E. Porter, which demurrer was overruled by the trial court. Thereupon, plaintiff filed a motion to require the defendant, Charles E. Porter, to elect upon which of the several defenses set up in his answer he would go to trial, which motion to elect was likewise overruled by the trial court. Thereafter, plaintiff filed a reply, joining issue upon the several averments of the answer.

The action was tried upon the equitable issues raised and joined by the pleadings, without the aid of a jury, and the trial resulted in a finding, decree and judgment in favor of the defendant, Charles E. Porter, and against the plaintiff. After unsuccessfully moving for a new trial and for arrest of the judgment, plaintiff was allowed an appeal to this court from the decree and judgment *nisi*.

It was admitted on the trial by the respective parties that plaintiff and Emma Collier were married in November, 1916, and that they were husband and wife at the death of Emma Collier, which occurred in March, 1925; that Emma Collier died without being survived by a child, or other descendant, in being; that Emma Collier died owning, seized and possessed of, the lands described in the petition; and that said lands were purchased with the separate funds of Emma Collier, deceased. The evidence further discloses that Emma Collier died testate, and that her will was admitted to probate in the Probate Court of Miller County on April 16, 1925. The will of Emma Collier was subscribed by the testatrix on September 8, 1917, and was duly attested by two witnesses. By said will, the testatrix, after directing the payment of all her just debts and funeral expenses, bequeathed to her sisters, Rosa Ellis and Nettie Erkson, and to her brothers, E. B. Porter and Albert Porter, the sum of one dollar to each, and bequeathed to her husband, J. H. Collier, the plaintiff and appellant herein, the sum of one dollar. The will further provides: ''And all the balance of my property, both real and personal, that I have at my death, I give and bequeath to my brother, Charles E. Porter, of Eldon, Mo. I hereby appoint Ida Porter my executrix without bond.'' Letters testamentary were granted and issued to Ida Porter, wife of respondent, Charles E. Porter, as executrix of testatrix's estate, by the Probate Court of Miller County, upon the probating of said will.

On April 30, 1925, fourteen days after the probating of testatrix's will and the granting of letters testamentary upon her estate, the plaintiff and appellant herein, J. H. Collier, the widower of testatrix, filed his written renunciation of testatrix's will, and on June 16, 1925, two months after the granting of letters testamentary upon testa-

trix's estate, the plaintiff and appellant also filed his written election to take one-half of the real and personal property and estate of which the said Emma Collier died seized and possessed, subject to the debts of said deceased, as provided by Section 321, Revised Statutes 1919, and as provided by the act of the General Assembly approved on March 29, 1921. [Laws of 1921, page 119.] The written declarations, renouncing the said will, and electing to take under the statute, so filed by the plaintiff and appellant, were duly acknowledged by the plaintiff, J. H. Collier, before a notary public in and for Miller County, Missouri.

The evidence on behalf of respondent, Charles E. Porter, tends to show that said respondent was the youngest of the brothers and sisters of Emma Collier, and that he had resided and made his home with Emma Collier from the time he was ten or eleven years of age until his marriage with Ida, in the year 1906, when he had reached the age of thirty years, at which time he established a home for himself and his wife; that, prior to his marriage in 1906, respondent, Charles E. Porter, performed the chores, and other like services, about the home place of his sister Emma (then Mrs. Yates), and assisted in the care of his sister's then husband, John Yates, who was afflicted with tuberculosis and was an aged man, and who died in the spring of the year 1916; that, after his marriage in 1906, respondent continued to work at times about the Yates home place, by looking after the live-stock, helping to gather the crops, building fences, and in cutting and gathering firewood; that, during the life of John Yates, Emma Collier's former husband, said Yates, had declared, in the presence of certain of respondent's witnesses, that he (Yates), and his wife, Emma, were indebted to respondent, Charles E. Porter, for the work and services respondent had performed for them in caring for John Yates, and in looking after the home place of John Yates and his wife, Emma; and that it was the intention of John Yates and his wife, Emma, to repay and reimburse respondent, for the work and services rendered by respondent, with whatever property John Yates and his wife, Emma, might have; and that Emma Collier, during the life of her former husband, John Yates, and thereafter, had frequently stated to various persons that she was under obligation to her brother, Charles E. Porter, for all that he had done for her, and for her former husband, John Yates, and that she could only repay him with her property, and that she purposed and intended to leave whatever property she owned and possessed to her brother, Charles Porter, the respondent herein, to repay him for the services so rendered.

The evidence on behalf of the plaintiff-appellant was to the effect that, after the marriage of plaintiff and Emma Collier, formerly Mrs. Yates, and during the life of Emma's former husband, John Yates, Emma had "kept up" her brother, Charles Porter, by supplying

provisions and clothing for him and his family; that Charles Porter was indolent, and was the cause of some domestic friction and quarrels between Emma Collier and her former husband, John Yates, and between Emma Collier and the plaintiff; and that both John Yates and the plaintiff had objected against Emma supplying her brother, Charles Porter, with provisions and clothing for himself and family, and had remonstrated with Emma therefor. It appears to be undisputed upon the record herein that plaintiff and his wife, Emma, lived apart at times during the marriage relation, and that the wife at one time commenced an action for divorce against the plaintiff, which divorce action, however, seemingly was abandoned by Emma Collier, or, at least, the divorce action was not prosecuted to a final decree or judgment. The aforementioned will of Emma Collier was seemingly made and subscribed by her during one of those periods of domestic difficulty and separation between plaintiff and his wife, and plaintiff denied that he had information or knowledge of said will, until after the death of his wife.

The only testimony respecting the making of the alleged oral contract, and respecting the terms and conditions of said alleged oral contract, in pursuance and furtherance of which alleged contract the respondent, Charles E. Porter, claims the will of Emma Collier was made, was given by Ida Porter, the wife of the respondent, Charles E. Porter. She testified, as follows:

"Q. Now then, Mrs. Porter, did you ever have any conversation with Mr. Yates and his wife with regard to the pay which Charley (respondent) was to get for his labor? A. Well, we were up there visiting, and we were all inside sitting around the cookstove, and Mr. Yates said, 'We are getting awfully old and feeble, and we are going to have someone stay with us, and the best thing we could do would be to let these two children live on the farm here—move in the old house—and then leave what we have to them;' then, after that, there was the farm over east there, and he said, 'I believe you had better sell this farm and leave them the money,' and so they sold that farm and bought a little house and lot in Barnett, and they would call us whenever they wanted us. Q. Was Charley (respondent) present at that conversation you related? A. Yes, sir. Q. What did he say? A. He said it made him feel bad for them to sit and talk to us that way, and he and I both agreed we would take care of them all the days of their life. Q. Did you carry that out in pursuance to this agreement? A. Yes, sir. Q. Did you frequently talk to them after that about it? A. Yes, sir, and Mr. Yates has often said he wished they would have enough to pay us for what we had done for them. Q. Was that in the presence of your husband? A. Yes, sir. Q. Was he (Charles Porter) ever called upon that he didn't help them? A. He went every time they called for him. Q. Did you go, too? A. Yes, sir; I went every time they called for him."

I. At the outset of our consideration of this appeal, we are confronted with a motion to dismiss the appeal, filed by respondent, Charles E. Porter, upon the ground that the original printed brief of appellant contains no assignment of errors. After the filing of said motion to dismiss the appeal, but before the day upon which the cause was set down upon our docket for argument and submission, the appellant filed herein a supplemental printed brief, which is in all respects identical with his original printed brief, except that the supplemental brief of appellant sets out separately, upon an additional page, and under an appropriate title or heading, an "Assignment of Errors." Respondent, Charles E. Porter, has filed herein a motion to strike the amended and supplemental brief of appellant from the files, upon the ground that the amended and supplemental brief of appellant was filed out of time, and was not filed in compliance with Rule 15 of this court. Both of respondent's said motions were taken by this court as submitted with the main case, and hence a ruling of said motions is required, before proceeding to a ruling and decision of the merits of the appeal.

Rule 15 of this court provides that "the brief for appellant shall distinctly allege the errors committed by the trial court, and shall contain in addition thereto: (1) a fair and concise statement of the facts of the case without reiteration, statements of law, or argument; (2) a statement, in numerical order, of the points relied on, with citation of authorities thereunder, and no reference will be permitted at the argument to errors not specified; and (3) a printed argument, if desired." Reference to appellant's original printed brief discloses that the same contains: (1) a fair and concise statement of the facts of the case; (2) a "brief," or statement, in numerical order, of the points relied on by appellant, with appropriate citation of authorities thereunder; and (3) a printed argument. While the original brief of appellant does not contain a separate and formal "assignment of errors," yet an examination of the brief, in its entirety, discloses that such brief "distinctly alleges (and points out) the errors committed by the trial court," namely, that the finding, decree and judgment of the trial court was for the wrong party, and that the evidence, or proof, was insufficient to establish the contract alleged in respondent's answer to have been made between respondent and his sister, Emma Collier, and her former husband, John Yates. Neither respondent nor this court could be misled by appellant's original brief as to the errors of the trial court relied upon by appellant as grounds for a reversal of the decree and judgment of the trial chancellor. The two motions, aforesaid, of respondent are not well grounded, and both motions are therefore overruled and denied. [Amick v. Empire Trust Co., 317 Mo. 157, 164.]

II. Appellant insists that a wife cannot defeat, by a will, or testament, the statutory marital rights of her husband in the real property owned by the wife, and, if the wife has attempted to defeat such statutory marital rights of her husband by will, such will or testament of the wife is subject to the statutory marital rights of her husband, and the beneficiaries of the will take the devised real property subject to the statutory marital rights of the husband.

The marital rights of a husband in the real property belonging to his wife at the time of her death are fixed by statute, and the procedural steps to be taken and followed by the surviving husband, in order to avail himself of such marital rights, are likewise prescribed by statute. In 1921, prior to the death of appellant's wife, Emma Collier, the General Assembly enacted an act, which was approved on March 29, 1921, and which became effective and operative on June 20, 1921, reading as follows:

"The estate which a widower may have in the real estate of his deceased wife, known as 'tenancy by the curtesy,' is hereby abolished, and in lieu thereof the widower shall have the same share in the real estate of his deceased wife that is provided by law for the widow in the real estate of her deceased husband, with the same rights of election and the same limitations thereto; provided that nothing contained in this act shall be so construed as to defeat any estate by the curtesy which shall have vested prior to the date of taking effect of this act." [Laws of 1921, page 119.]

The aforesaid Act of 1921 was construed by this division of this court in the recent case of O'Brien v. Sedalia Trust Co., 5 S. W. (2d) 74, wherein we ruled and held that the said Act of 1921 repealed, by implication, Section 320, Revised Statutes 1919, which gave to the widower, in the event of his wife dying without any child, or other descendants, in being, capable of inheriting, one-half of the real and personal estate of the wife, absolutely, subject to payment of the wife's debts, and wherein we ruled, furthermore, that, under, and by virtue of, said Act of 1921, both widowers and widows share in the real estate of their deceased consorts under the same statutes, and, if the surviving consort renounces the will of the deceased consort, in the manner and time as prescribed by Section 329, Revised Statutes 1919, and makes and files an election to take one-half of the deceased consort's real estate, in the manner and time as provided by Section 323, Revised Statutes 1919, and by Laws of Missouri 1921, page 111 (enacting new Sec. 325, R. S. 1919), then such surviving consort, whether widow or widower, takes under, and pursuant to, the provisions of Section 321, Revised Statutes 1919. The said Section 321, Revised Statutes 1919, provides: "When the husband (or

wife) shall die without any child or other descendants in being, capable of inheriting, his widow (or, her widower) shall be entitled: . . . second, to one-half of the real and personal estate belonging to the husband (or, wife) at the time of his (or, her) death, absolutely, subject to the payment of the husband's (or, wife's) debts.'' [We have interpolated the parenthetical clauses to conform to our construction of Section 321, Revised Statutes 1919, as affected by the Act of 1921, as announced in the O'Brien case, supra.]

It has been repeatedly ruled by this court that a wife cannot defeat by will the interest given the husband by Section 320, Revised Statutes 1919, in the real estate belonging to his wife at the time of her death, and that the surviving husband may renounce the will of the deceased wife and disclaim any interest thereunder, and take one-half of the testatrix's estate, subject to payment of testatrix's debts, as provided in Section 320, Revised Statutes 1919. [O'Brien v. Ash, 169 Mo. 283; Waters v. Herboth, 178 Mo. 166; Spurlock v. Burnett, 183 Mo. 524; Gilroy v. Brady, 195 Mo. 205; Hafner v. Miller, 299 Mo. 214.]

While this court has held, in O'Brien v. Sedalia Trust Co., supra, that the effect of the enactment of the Act of 1921 (Laws of 1921, page 119) was to repeal, by implication, Section 320, Revised Statutes 1919, and, thereafter, that both widowers and widows share in the real estate of their deceased consorts under the same statutes, so that the widower now takes under Section 321, Revised Statutes 1919, which section is declaratory of a widow's rights, instead of under Section 320, Revised Statutes 1919, as formerly, and then only pursuant to renunciation of the will of the deceased wife and pursuant to election, as is required of the widow in such cases and under said section of the statute, nevertheless we have held, also, that Sections 320 and 321, Revised Statutes 1919, are twin sections and stand together, and were so intended by the lawmakers, to form one law establishing the relative rights of the husband and the wife in the property of each other under the same conditions, thereby placing husband and wife upon an equal footing. [Waters v. Herboth, 178 Mo. 166, 171; Spurlock v. Burnett, 183 Mo. 524, 531; Gilroy v. Brady, 195 Mo. 205, 209; Waddle v. Frazier, 245 Mo. 391, 401; Headington v. Woodward (Mo.), 214 S. W. 963, 966.] By analogy, the cases, above cited, ruled under construction of Section 320, Revised Statutes 1919, and the principle, or rule, of law therein decided, are equally applicable to Section 321, Revised Statutes 1919, notwithstanding the repeal, by implication, of Section 320, Revised Statutes 1919, as aforesaid. Moreover, we have held, in Lilly v. Menke, 143 Mo. 137, that a husband cannot defeat by will the dower rights of his surviving widow under Section 321, Revised Statutes 1919.

The record herein discloses that it was admitted by the parties on the trial that appellant filed a written renunciation of the will of his

deceased wife, Emma Collier, refusing to accept the provision made for him by said will, in the form and manner, and within the time, prescribed by Section 329, Revised Statutes 1919, and that appellant also filed his written declaration electing to take one-half of the real and personal estate belonging to the said Emma Collier at the time of her death, in the form and manner, and within the time, prescribed by Laws of Missouri 1921, page 111 (known as new Sec. 325, R. S. 1919). Such action upon the appellant's part was sufficient to vest in him, absolutely, the title to one-half of the lands in controversy herein, subject to the payment of the debts of his deceased wife, as provided in Section 321, Revised Statutes 1919, unless the appellant be barred from his statutory rights and allowances under, and by virtue of, Section 333, Revised Statutes 1919, which section provides: "And if a husband leave his wife and go away and continue with an adulteress, or abandon her without a reasonable cause and continue to live separate and apart from her for the space of one whole year next preceding her death, or dwell with another woman in a state of adultery continuously, he shall be forever barred from his inheritance, jointure, homestead, curtesy and statutory allowances in the real and personal estate of the wife, unless his wife be voluntarily reconciled to him and suffer him to dwell with her." While it is alleged in the answer of respondent, Charles E. Porter, that appellant "had abandoned and was living separate from the said Emma Collier at the time of her death, and that said abandonment had been continuous for more than one year next before the death of the said Emma Collier," and while there is some evidence in the record before us that appellant and his wife had lived apart at times during the marriage relation, yet the evidence is not of such character, weight or sufficiency as to establish the fact that appellant had abandoned his wife without a reasonable cause and had continued to live separate and apart from her for the space of one whole year next preceding her death, or that appellant had been guilty of any of the other derelictions prescribed and mentioned in said Section 333, Revised Statutes 1919. Nor does the evidence establish the fact that, if appellant had been guilty of any of the prescribed derelictions, appellant's wife was not thereafter "voluntarily reconciled to him" and did not "suffer him to dwell with her." In fact, the evidence on behalf of respondent discloses that the last separation between appellant and his wife occurred in 1922, some two or three years prior to the death of Emma Collier, and that thereafter the appellant and his wife dwelt together in the same house, and continued so dwelling together until about a month, or less, before the wife's death.

Neither is there any substantial evidence that, "prior to the marriage of the said J. H. Collier with the said Emma Collier, they en-

tered in a prenuptial contract whereby each of them was to retain as their (his, or, her) separate property all of the lands, tenements, goods and chattels which (they) each possessed at the time of their marriage; and that the said J. H. Collier thereafter procured possession of the said contract and destroyed the same,'' as alleged in the answer of respondent, Charles E. Porter. Nor was any attempt made by respondent to show the substance, content, or terms and provisions of such antenuptial contract, if such a contract or agreement had ever been entered into by and between appellant and his wife. Not only must the proof show beyond a reasonable doubt that such an antenuptial contract was made, but it must also appear from such proof that the terms of the contract were clear, definite and unequivocal; and, absent such character of proof, the court cannot find the existence of such an antenuptial contract, much more give to such alleged antenuptial contract any force, effect or application. [Hafner v. Miller, 299 Mo. 214, 229, and cases there cited.]

III. The respondent, Charles E. Porter, claims, however, that, by virtue of the Married Women's Act of 1889 (Secs. 7323-7328, R. S. 1919), which act (we intimated in O'Brien v. Sedalia Trust Co., supra) was not repealed or affected by the Act of 1921 (Laws 1921, p. 119), abolishing curtesy, the decedent, Emma Collier, had the right to contract respecting her separate property, real and personal, and that any such contract so made by Emma Collier is enforceable, either before or after her death; that, while, and although, respondent, Charles E. Porter, does not claim the real property in controversy under, and by virtue of, the will (as such) of Emma Collier, nevertheless the will of Emma Collier evidences her indebtedness to respondent for services performed by him, and her intention to pay for the services rendered and performed by respondent, Charles E. Porter, pursuant to the alleged oral contract entered into by and between respondent and Emma Collier, and furthermore evidences an attempted, although ineffectual, performance of the alleged oral contract on the part of the said Emma Collier. In other words, it seems to be the theory and claim of respondent, Charles E. Porter, that the will of Emma Collier, deceased, evidences the intention of Emma Collier to perform, on her part, the alleged oral contract between Emma Collier and respondent; that such a contract to will, or to convey, to the promisee the property of the promisor, made in consideration of services to be rendered to the promisor by the promisee, and fully performed by the promisee on his part, creates an equitable trust in the property of the promisor; and that, upon the death of the promisor, without having effectually carried out, or performed, the promise or contract, on her part, the lands sought to be devised to the promisee

by the will of the promisor, in an attempted performance of such promise or contract, are impressed with an equitable trust; wherefore, a court of equity will take hold of the devised property, and in equity do, and order to be done, that which the deceased promisor had promised and agreed to do.

The appellant, on the other hand, while conceding that, inasmuch as he has renounced the will of his deceased wife and elected to take (under Sec. 321, R. S. 1919) one-half of the real and personal estate belonging to his wife, Emma Collier, at the time of her death, he takes such property *subject to the payment of the wife's debts*, strenuously contends that the evidence herein is wholly insufficient to establish the making of the alleged oral contract, or agreement, between Emma Collier and her former husband, John Yates, and the respondent, Charles E. Porter, or to establish any indebtedness on the part of Emma Collier to the said respondent. Such contention of the appellant leads us to a consideration of the evidence respecting the making of the alleged oral contract relied upon by respondent, Charles E. Porter, and respecting the terms, provisions, and subject-matter of the alleged oral contract. We have quoted in full, in our statement of the evidentiary facts of the case, all of the evidence which we find in the record bearing thereon, which evidence was a part of the testimony of respondent's wife, Ida Porter. Such evidence, and the sufficiency thereof, must be viewed and considered in the light of the adjudicated cases.

In Hayworth v. Hayworth, 236 S. W. 26, 28, this division of this court, speaking of an alleged oral contract similar to the one claimed to have been made herein, through Judge RAGLAND (then Commissioner), said: "The enforcement of contracts of the character of the one here involved is an exception which courts of equity have engrafted upon the Statute of Frauds. The exception is one that is sparingly exercised, and then only within well-defined rules of procedure. Among those rules are the following: (1) The alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made and that full performance has been had; and (4) the work constituting performance must be such as is referable solely to the contract sought to be enforced. [Walker v. Bohannan, 243 Mo. 119, 136, 147 S. W. 1024; Berg v. Moreau, 199 Mo. 416, 97 S. W. 901, 9 L. R. A. (N. S.) 157.] The evidence should be reviewed in the light of these tests."

Speaking of the sufficiency of the proof respecting a similar alleged oral contract to convey or devise land, GRAVES, P. J., speaking for this division of this court, said in Walker v. Bohannan, 243 Mo. 119, 136: "To obviate these frauds (perpetrated under the strict letter and application of the Statute of Frauds), the exception to the stat-

ute (of frauds) here invoked was adopted by courts of equity, but not without well-defined rules of procedure-rules, which like the statute itself, would be a safeguard as against the perpetration of frauds. The rules cover many phases; i. e.: (1) The alleged oral contract must be clear, explicit and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one-hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract, as alleged, was in fact made and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) the work constituting performance must be such as is referable solely to the contract sought to be enforced, and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; and (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed, made before the acts of performance relied upon were had. . . . It is only where the very justice of the thing is so clear, that the refusal of relief would itself amount to a deep-seated wrong and fraud upon the party, that courts of equity will act, and as said before this is right. The fickleness of land titles should be averted. The wholesale enforcement of such contracts would bring more absolute wrongs than the absolute denial of relief in all such cases. It should therefore be with discerning eye and ear that the chancellor appealed to should proceed. The single purpose should be the prevention of a real fraud, rather than an imaginary one. His decree should protect substance, rather than shadow, and the evidence to support his decree should point to a real and actual fraud as the outgrowth of a failure to enforce a clear, certain, reasonable and specific contract. By this we mean a contract between the parties, not a contract made for the parties by loose declarations gathered together after death has sealed the lips.''

The applicable rules of procedure by which the evidence respecting such oral contracts is to be measured and tested, together with the juristic authorities of this and other jurisdictions supporting the application of those rules of procedure, are exhaustively discussed in the earlier cases of Rosenwald v. Middlebrook, 188 Mo. 58, and Grantham v. Gossett, 182 Mo. 651.

When the several tests prescribed by the foregoing established rules of procedure are applied to the only evidence herein (above quoted) respecting the making of the alleged oral contract, and respecting

the terms and conditions of such alleged contract, it is apparent and indisputable, we think, that respondent, Charles E. Porter, has wholly failed to prove and establish the contract as alleged in his answer. The answer of respondent alleges that the oral contract, agreement, and understanding was had and made "between this defendant, Charles E. Porter, and said Emma Collier and her second husband" (John Yates), and "that said contract was made between himself and the said sister (Emma Collier) and her former husband (John Yates) long prior to the marriage between the said Emma Collier and the plaintiff." Ida Porter, the wife of respondent, Charles E. Porter, was the only witness who undertook to testify as to the making of the alleged oral contract, and as to its content, and this long after the lips of John Yates had been sealed by death, and also after the death of Emma Collier. The respondent himself is, of course, incompetent, and disqualified, under the statute (Sec. 5410, R. S. 1919), to testify respecting the alleged contract, the opposite party, or parties, thereto being dead. Respondent's wife testified that John Yates (Emma Collier's former husband) said: "We are getting awfully old and feeble, and we are going to have someone stay with us, and the best thing we could do would be to let these two children live on the farm here—move in the old house—and then leave what we have to them;" and (referring to another farm), "I believe you had better sell this farm and leave them the money." At most, the foregoing conversation of John Yates, if given as related by Ida Porter, would appear to have been merely suggestive and directory on his part, and there is nothing in the testimony of Ida Porter which would indicate, or tend whatsoever to show, that Mrs. Yates, afterward Emma Collier, assented to Mr. Yates' suggestions, or that she acquiesced therein, or agreed to be bound thereby. Nor does the conversation of John Yates identify the two farms referred to in said conversation with the lands here in controversy, which, according to the admissions of the parties on the trial, "were *purchased* with the separate funds of Emma Collier, deceased." The uncontroverted evidence herein tends to show that John Yates, the former husband of Emma Collier, upon his death, left nothing to respondent, Charles E. Porter, but that the real and personal property and estate of John Yates passed by will, or otherwise, upon his death, to his surviving widow, Emma Yates, afterward Emma Collier; and the uncontroverted evidence further shows that respondent filed no claim or demand, for services performed, against the estate of John Yates, deceased, and asserted no claim, title, or interest in any property belonging to John Yates at his death. While several of respondent's witnesses testified that Emma Collier, and her former husband, John Yates, had frequently stated and declared that they were indebted to respondent for work and services performed by him, and that they purposed and intended to repay and reward him for such services

with whatever property they, or either of them, might have and possess, such statements, or expressions, of gratitude, and of an intention to reward, do not of themselves evidence a contract. [Collins v. Harrell, 219 Mo. 279, 309; Hayworth v. Hayworth (Mo.), 236 S. W. 26, 29.]

The finding of the trial chancellor, incorporated as a part of the decree and judgment *nisi*, is that "long prior to the death of Emma Collier and prior to her marriage with the plaintiff, J. H. Collier, she made and entered into a contract and agreement by the terms of which she contracted and agreed with the defendant, Charles E. Porter, that if he, the said defendant, would care for her and nurse her during sickness, cultivate her lands and do such other work for her as may be necessary for and during her natural life, then, and in that event, she, the said Emma Collier, would leave to the said defendant, Charles E. Porter, as compensation for his services as aforesaid, all property of every kind and description, both real, personal and mixed, of which she should die seized and possessed; the court further finds that the said Charles E. Porter faithfully performed all of his contract with the said Emma Collier, and that the said Emma Collier, in fulfillment of her part of said contract, executed her last will and testament, by which she devised and bequeathed all of her property to the said Charles E. Porter, save and except the sum of one dollar to her husband and one dollar each to the remaining defendants; the court further finds that the said contract and agreement between the said Emma Collier and Charles E. Porter was in full force and effect at, and prior to, the time of the marriage of the said Emma Collier with the said J. H. Collier; the court further finds from the evidence that, by reason of the fact that the property of the said Emma Collier was charged with the contract made with the said Charles E. Porter, as aforesaid, at and prior to the marriage of said Emma Collier with the plaintiff herein, the said contract took precedence over the marital rights of the plaintiff, J. H. Collier, and that for that reason the plaintiff has no right, title, claim or interest of any kind or nature in and to any of the real estate hereinbefore described."

The respondent urges that this court should defer to the findings and conclusions of the trial chancellor, who, because of his opportunity to view the respective parties, and their witnesses, while testifying on the trial below, has a greater advantage than this court to judge of the credibility of the witnesses and of their testimony. It is true that, in equity causes, where the testimony is conflicting and rather evenly balanced, and there is substantial evidence upon which to predicate the findings and decree of the trial chancellor, we are disposed to defer somewhat to the chancellor's findings; but we accord such deference to the chancellor's findings only where such findings appear to be cor-

rect, for this court, in equity causes, is never concluded by the finding of facts by the court below. [Farmers' Bank v. Handly (Mo.), 9 S. W. (2d) 880, 891; Benne v. Schnecko, 100 Mo. 250, 258.] As we have said, the evidence herein is insufficient to establish the alleged oral contract upon which respondent relies for the equitable relief prayed in his answer, and the findings of the trial chancellor are therefore incorrect, and are unsupported by any substantial evidence.

IV. Appellant claims, in addition to an undivided one-half interest, in fee simple, in the lands in controversy, that he is entitled to a homestead in the remaining one-half thereof, for and during his life, or during widowerhood. The claim of appellant to a homestead in the lands in controversy must be denied. In the first place, we find no evidence in the record herein that the lands in controversy, or any part thereof, were used and occupied by J. H. Collier and Emma Collier, husband and wife, or by either of them, as a homestead. In the second place, the right of homestead is purely and wholly a statutory right, prescribed by Chapter 44, Revised Statutes 1919. Section 5857, Revised Statutes 1919, of the Homestead Statute, provides: "If any such housekeeper or head of a family shall die and leave surviving *him* a *widow* or minor children, *his* homestead . . . shall pass to and vest in such *widow* or children, or if there be both, to such *widow* and children," etc. Section 5858, Revised Statutes 1919, of the Homestead Statute, provides: "If a *widow*, being a housekeeper or head of a family, die, and leave surviving *her* a minor child or children, *her* homestead, in the lands owned by *her* at her death. . . . , shall pass to and vest in such *minor child or children*," etc. [Above italics are our own.] In no section of the Homestead Statute is there any provision of law for the continuation of a homestead in the surviving *widower* of a deceased wife, even though the wife may have owned land by general title and occupied the same as a homestead. The appellate courts of this State have repeatedly held that homestead succession has nothing to uphold it but the force of positive statute law, and that succession to, and continuation of, the right of homestead is limited by the statutory provisions, and to the persons prescribed by the Homestead Statute. [Keyte v. Peery, 25 Mo. App. 394; Richter v. Bohnsack, 144 Mo. 516; Casler v. Gray, 159 Mo. 588; Chapman v. McGrath, 163 Mo. 292.] The Act of 1921 (Laws 1921, page 119), abolishing curtesy, added nothing to the Homestead Statute, or did that act operate as an amendment to the Homestead Statute; hence, the Act of 1921 gave the surviving widower of a deceased wife no homestead right, even though the lands, or a part thereof, belonging to the wife at her death, were used and occupied as her homestead.

Inasmuch as it appears improbable that respondent, Charles E. Porter, will be able to furnish additional evidence, or proof, of a

sufficiently substantial character to establish the oral contract alleged in his answer, or to meet the tests prescribed by the procedural rules announced in similar adjudicated cases by this court, the judgment *nisi* should be reversed, and the cause should be remanded with directions to enter a judgment upon the first count of the petition, adjudging plaintiff, J. H. Collier, to have title, in fee simple, absolutely, to an undivided one-half of the described lands, and adjudging defendant, Charles E. Porter, to have title in fee simple to the remaining undivided one-half of the described lands; and to proceed with partition of said described lands under the second count of the petition. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Frank, J.,* not sitting.